UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

                    Plaintiff,

                                              <u>REPORT &</u>
                                              <u>RECOMMENDATION</u>
              - against -
                                              CR 08-0039 (SJ)(MDG)
TRULS SOERBOTTEN,

                    Defendant.

- - - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

    Defendant Truls Soerbotten, who is charged with the
importation of heroin into the United States, has moved to
suppress certain statements made by him following his arrest on
September 17, 2007, because he was too intoxicated to have
knowingly waived his <u>Miranda</u> rights.  The Honorable Sterling
Johnson has referred the defendant's motion to suppress to me for
report and recommendation.

    In his moving affidavit, the defendant alleges that he was
arrested for importing heroin after he disembarked from a flight
from Georgetown, Guyana that landed at John F. Kennedy Airport
("J.F.K.") on September 17, 2007.  Ct. doc. 26.  The defendant
states that immediately preceding and during the plane trip he
consumed a significant amount of alcoholic beverages which
rendered him highly intoxicated.  Ct. doc. 26.  He also states
that he has no recollection of being read his <u>Miranda</u> rights or

of waiving those rights or of providing law enforcement with any statement relevant to this case. Ct. doc. 26.

At the start of the suppression hearing held on January 21, 2009, counsel for the defendant orally moved to suppress a statement allegedly made by the defendant after his arrest but before he received <u>Miranda</u> warnings. (Tr. 2:17-3:16). As the government had only recently given defense counsel notice that the defendant had made such a statement and because consideration of the defendant's expanded motion would not significantly affect the scope of the suppression hearing, this Court agreed to entertain the motion. (Tr. 4:7-5:3).

The government called as its witnesses Customs and Border Protection ("CBP") Officer John Saleh and Special Agents Joseph Jerla and Thomas Cadwallader of Immigration and Customs Enforcement ("ICE"). The defendant neither testified nor called any witnesses. This Court makes the following findings of fact based on the testimonies of the officers whom I found to be credible.

<u>FINDINGS OF FACT</u>

Officer Saleh has been an officer of the CBP for four years stationed at J.F.K. (Tr. 7:3-8:17). While on duty on September 17, 2007, he arrested the defendant around 6:00 a.m. after discovering heroin hidden inside a suitcase. (Tr. 9:15-10:3, 19:14-19:19). Before conducting a search of the suitcase,

Officer Saleh approached and asked the defendant at the baggage claim area if the suitcase belonged to him. (Tr. 15:12-15:13). In response to Officer Saleh's request, the defendant produced a luggage identification tag which Officer Saleh confirmed corresponded to the tag on the suitcase. (Tr. 16:11-16:22). The defendant then put the suitcase on an examination table and opened a combination lock on the suitcase. (Tr. 15:9-17:14). In the course of the search of the suitcase, the defendant stood near Officer Saleh on the right. (Tr. 19:20-19:23). After Officer Saleh discovered a plastic bag secreted in the vinyl lining of the suitcase Officer Saleh and another officer escorted the defendant to a private examination room. (Tr. 26:14-27:13; 28:15-29:7). He then conducted a field test of material he removed from the side of the suitcase to test for the presence of narcotics. (Tr. 28:12-28:20). After the field test revealed a positive result for heroin, Officer Saleh told the defendant that he was under arrest for smuggling heroin. (Tr. 29:14-29:19). The defendant responded that he was sure that he had cocaine. (Tr. 29:20-30:3). Officer Saleh then patted down the defendant to search for weapons and other contraband. (Tr. 10:23-11:4).

Officer Saleh's initial encounter with the defendant before the search lasted approximately two to three minutes, during which time Officer Saleh asked the defendant routine questions about the defendant and the suitcase. (Tr. 14:8-14:14). After placing the defendant under arrest, Officer Saleh notified

special agents with ICE.  (Tr. 10:24-11:4).  Before Special Agent
Jerla arrived approximately an hour later, Officer Saleh
proceeded to complete paperwork relating to the seizure and
arrest.  (Tr. 34:11-35:24).  He intermittently questioned the
defendant to obtain pedigree information he needed for his
report, but did not interrogate the defendant.  (Tr. 34:11-
35:24).

Officer Saleh, who is also a trained emergency medical
technician, observed that the defendant appeared alert and walked
with a normal gait.  (Tr. 7:21-8:15; 11:17-11:23).  Officer Saleh
spoke to the defendant in English and observed that the defendant
did not appear to have difficulty understanding.  (Tr. 12:3-
12:15).  The defendant spoke English and was responsive to
questions posed.  (Tr. 12:5-12:15).  Officer Saleh did not notice
any odor of alcohol on the defendant's breath.  (Tr. 12:1-12:2).

At some point during the encounter, Officer Saleh took a
photograph of the contraband seized, the suitcase, and the
defendant.  (Tr. 20:15-20:21).  He later gave the camera to a
coordinator, who handled it from that point on.  (Tr. 23:18-
23:21).  When Officer Saleh recently attempted to obtain the
pictures, he learned that they had been deleted from the camera.[1]
(Tr. 21:10-21:14).

---

[1]  Special Agent Jerla testified that he believed that the
United States Marshals took photographs of the defendant as part
of his processing.  (Tr. 65:13-65:16).

Special Agent Jerla arrived at the CBP examination room around 7:00 a.m. and first spoke briefly with Officer Saleh. (Tr. 39:17-40:12). Approximately fifteen minutes later, Special Agent Cadwallader joined the other officers. (Tr. 40:4-40:6). Both agents entered the examination room and identified themselves. (Tr. 40:15-40:17). Special Agent Jerla orally advised the defendant of his <u>Miranda</u> rights using a <u>Miranda</u> card that he kept inside his credentials case for assistance. (Tr. 40:15-40:17; 41:6-41:9). After advising the defendant of each individual right, Special Agent Jerla confirmed with the defendant that he understood. (Tr. 42:19-43:15).

The defendant confirmed that he understood his rights and agreed to speak with the ICE agents. (Tr. 43:16-43:19). He admitted that he knew he had drugs in the suitcase, but did not know that it was heroin. (Tr. 61:2-61:17). He believed it was half a kilo of cocaine or at least that is what the individual who gave him the drugs told him. (Tr. 61:2-61:17).

Only Special Agents Jerla and Cadwallader were present throughout this interrogation. (Tr. 44:6-44:10). Officer Saleh intermittently entered and left the room to do his paperwork. (Tr. 44:6-44:10).

After questioning the defendant for approximately fifteen to twenty minutes, the agents took the defendant to an ICE office located in the same terminal. (Tr. 45:1-45:9). The two agents and the defendant, who was handcuffed with his hands behind him,

walked approximately five to ten minutes to get from the examination room to the office. (Tr. 45:5-21; 54:14-54:16). To do so, they walked past the baggage carousels and immigration inspection areas and up a ramp. (Tr. 45:10-45:17).

At the ICE processing office, Special Agents Jerla and Cadwallader initially placed the defendant in a holding cell while they completed paperwork and put away their weapons. (Tr. 46:2-46:5). They then patted down the defendant and took him into an interview room. (Tr. 75:13-75:14). The agents provided the defendant with a written ICE "Statement of Rights" and "Waiver" form. (Tr. 46:12-48:5; 75:11-75:14). Special Agent Jerla reviewed with the defendant each of the rights listed on the form and the defendant confirmed that he understood his rights. Special Agent Jerla reviewed with the defendant the waiver portion of the form and the defendant confirmed that he understood that section. (Tr. 46:12-46:25; 75:15-75:23). The defendant read the form, printed his name, and signed the waiver. (Tr. 47:1-47:4). The defendant also agreed to speak with the ICE agents. (Tr. 48:21-48:23).

During the ensuing interview, the defendant made several statements admitting to his knowing and intentional importation of a controlled substance concealed in his suitcase into the United States. (Tr. 61:2-61:17; 66:2-66:16).

Special Agents Jerla and Cadwallader both observed that the defendant walked normally and needed no assistance. (Tr. 45:22-

46:1; 75:6-75:10).  They did not detect the odor of alcohol on

his breath.  (Tr. 50:24-51:1; 78:4-78:5).  Both also observed

that the defendant had no trouble speaking or understanding

English.  (Tr. 40:18-41:2; 72:12-73:1).  Both agents had their

holstered guns concealed under their jackets and did not display

their weapons during any of the interviews.  (Tr. 44:11-44:18;

73:25-74:3).

 The defendant has no prior arrests and was born in the

1950s.  (Tr. 49:21-50:2; 58:19-60:1).


<u>LEGAL DISCUSSION AND CONCLUSIONS OF LAW</u>

 Preliminary, this Court first addresses the scope of the

suppression hearing conducted.  The defendant originally moved to

suppress only his statements made after the administration of

<u>Miranda</u> warnings, but counsel sought at the hearing to suppress

statements the defendant made before the warnings.  This Court

agreed to entertain the expanded motion in the interest of

judicial expediency.  <u>See</u>, <u>e.g.</u>, <u>Keiper v. Cupp</u>, 509 F.2d 238,

242 (9th Cir. 1975).


<u>Legal Standards</u>

 A suspect's statements are admissible only if a court

determines after evaluation of the "totality of all the

surrounding circumstances" that they were voluntarily made --

that is, "the product of an essentially free and unconstrained

choice by its maker."  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218,

46:1; 75:6-75:10).  They did not detect the odor of alcohol on

his breath.  (Tr. 50:24-51:1; 78:4-78:5).  Both also observed

that the defendant had no trouble speaking or understanding

English.  (Tr. 40:18-41:2; 72:12-73:1).  Both agents had their

holstered guns concealed under their jackets and did not display

their weapons during any of the interviews.  (Tr. 44:11-44:18;

73:25-74:3).

 The defendant has no prior arrests and was born in the

1950s.  (Tr. 49:21-50:2; 58:19-60:1).


<u>LEGAL DISCUSSION AND CONCLUSIONS OF LAW</u>

 Preliminary, this Court first addresses the scope of the

suppression hearing conducted.  The defendant originally moved to

suppress only his statements made after the administration of

<u>Miranda</u> warnings, but counsel sought at the hearing to suppress

statements the defendant made before the warnings.  This Court

agreed to entertain the expanded motion in the interest of

judicial expediency.  <u>See</u>, <u>e.g.</u>, <u>Keiper v. Cupp</u>, 509 F.2d 238,

242 (9th Cir. 1975).


<u>Legal Standards</u>

 A suspect's statements are admissible only if a court

determines after evaluation of the "totality of all the

surrounding circumstances" that they were voluntarily made --

that is, "the product of an essentially free and unconstrained

choice by its maker."  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218,

225-26 (1973) (quotation omitted); see United States v. Kaba, 999 F.2d 47, 51 (2d Cir. 1993). A defendant may waive his Fifth Amendment rights if "the waiver is made voluntarily, knowingly and intelligently." Miranda v. Arizona, 384 U.S. 436, 444 (1966). In determining whether a defendant validly waived his or her Fifth Amendment rights, the court must conduct a two-part inquiry: first, whether the waiver was the "product of a free and deliberate choice rather than intimidation, coercion, or deception," Moran v. Burbine, 475 U.S. 412, 421 (1986); and second, whether the waiver was made with the "full awareness of the right being waived and of the consequences of waiving that right." See United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995).

In making these determinations, the court should make a "careful evaluation of the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." United States v. Lynch, 92 F.3d 62, 65 (2d Cir. 1996) (quoting United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991)). "The government bears the burden of demonstrating by a preponderance of the evidence that a defendant waived his constitutional rights." Id.

Generally, courts have found that "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that

waiver, but it is not inevitably either necessary or sufficient to establish waiver." North Carolina v. Butler, 441 U.S. 369, 373 (1979).  Nonetheless, the court must examine the totality of the circumstances to determine whether the government has met its "great" burden to prove the validity of a waiver.  Id. (holding that the prosecution bears a "great" burden to prove the validity of a waiver"); Anderson, 929 F.2d at 99; see also Moran, 475 U.S. at 421.

Courts have generally found no single element of the accused's individual characteristics dispositive of whether a defendant knowingly executed a waiver.  Alvarez v. Keane, 92 F. Supp. 2d 137, 150 (E.D.N.Y. 2000).  Factors that are considered include the defendant's intelligence and education, see United States v. Burrous, 147 F.3d 111, 116 (2d Cir. 1998); Stawicki v. Israel, 778 F.2d 380, 382-84 (7th Cir. 1985); the defendant's familiarity with the criminal justice system, see Stawicki, 778 F.2d at 383-84; the defendant's physical and mental condition at the time of the interrogation, see United States v. Male Juvenile, 121 F.3d 34, 40 (2d Cir. 1997); United States v. Guay, 108 F.3d 545, 550 (4th Cir. 1997); and the defendant's age, see Burrous, 147 F.3d at 116.

The defendant does not contend in his motion papers that he was subject to intimidation, deception, or coercion during administration of his Miranda rights and interrogation.  Nor does this Court find any evidence that the conditions of the

interrogation or the conduct of the officers was coercive, intimidating, or otherwise improper. No weapons were shown to the defendant. (Tr. 44:11-44:18; 49:11-49:12; 73:25-74:3; 77:12-77:13). The defendant was handcuffed while seated in the CBP interview room to a bench for approximately an hour before being orally advised of his <u>Miranda</u> rights by Special Agent Jerla and later handcuffed by one hand to a table in the ICE interview room before signing the waiver form. (Tr. 34:10-34:20; 49:3-49:10). Handcuffing alone, absent any other evidence of overbearing conduct by the officers, is not sufficient to undermine the validity of a waiver. <u>See</u> <u>United States v. Ansaldi</u>, 372 F.3d 118, 129 (2d Cir. 2004) (finding that the fact that police drew their guns to effectuate arrest and then handcuffed the defendant does not necessarily establish that defendant's consent to search home was coerced); <u>United States v. Harper</u>, 466 F.3d 634, 644 (8th Cir. 2006) (defendant's waiver voluntary and knowing although two officers stood closely over defendant while he lay on the ground handcuffed).

Thus the only issue presented is whether the defendant's waiver was knowing and intelligent.

<u>Statements Made Immediately After Arrest</u>

After Officer Saleh told the defendant that he was under arrest for smuggling heroin, the defendant responded that he was sure that he had cocaine. Although the defendant made this

statement before being advised of his _Miranda_ rights, the
statement was not the product of interrogation, but rather, a
voluntary statement. <u>See</u> <u>Miranda</u>, 384 U.S. at 478 ("Any
statement given freely and voluntarily without any compelling
influences is . . . admissible in evidence").  The defendant made
the statement spontaneously after being told he had heroin in his
suitcase and not in response to a question or a comment designed
to elicit a response.  <u>See</u> <u>United States v. Vigo</u>, 487 F.2d 295,
299 (2d Cir. 1973) (finding defendant's statements immediately
after his arrest and prior to a _Miranda_ warning voluntary and
admissible into evidence where statement was not made in response
to police inquiries but instead was motivated by the desire to
protect defendant's companions) <u>United States v. Miller</u>, 382 F.
Supp. 2d 350, 370 (N.D.N.Y. 2005) ("Nothing in the Fifth
Amendment prohibits the police from merely listening to
volunteered statements and then using those statements at
trial").

<u>Statements Made After Miranda Warnings</u>

Based on Special Agent Jerla's testimony, I find that he
properly orally advised the defendant of his constitutional
rights as prescribed by _Miranda_ prior to the interview in the CBP
examination room and that the defendant then agreed to be
questioned by the two agents.  I also find that the defendant
signed a written waiver of his constitutional rights as

prescribed by <u>Miranda</u> at the ICE processing office after reviewing each of those rights with Special Agent Jerla.

Based on the testimonies of all three officers, I find that the defendant was not intoxicated and was able to understand the <u>Miranda</u> warnings administered. The defendant was able to carry on responsive, clear. and coherent conversations in English, appeared alert, and walked with a normal gait without assistance. None of the officers detected the presence of alcohol on his breath.

The defendant's unimpaired mental condition is also evidenced by his ability to unlock the combination lock on his suitcase and walk unassisted with his hands cuffed behind him from the CBP examination room to the ICE processing office. <u>See</u> <u>United States v. Spencer</u>, 995 F.2d 10, 11 (2d Cir. 1993) (per curiam) (defendant's state of mind can be inferred from his actions).

In any event, even if the defendant had consumed alcohol on his flight, the government has established that the defendant understood his rights before agreeing to be questioned. courts have found that evidence of a defendant's intoxication with alcohol or a controlled substance does not preclude a finding of a knowing and intelligent waiver provided that a defendant appreciates the nature of the waiver. <u>See</u>, <u>e.g.</u>, <u>Parsad v.</u> <u>Greiner</u>, 337 F.3d 175, 184 (2d Cir. 2003) ("The mere fact that petitioner is an alcoholic is insufficient to render his pre-

<u>Miranda</u> statements involuntary."); <u>United States v. Turner</u>, 157 F.3d 552, 555-56 (8th Cir. 1998) (holding that despite suspect's PCP intoxication, evidence showed he understood and knowingly waived his rights); <u>United States v. Brooks</u>, 125 F.3d 484, 491 (7th Cir. 1997) (statement voluntary despite claim that suspect was experiencing effects of crack cocaine, sleep deprivation, and a hand injury because defendant was alert, coherent, and able to make informed and voluntary choices); <u>United States v. Casal</u>, 915 F.2d 1225, 1229 (8th Cir. 1990) (coherent confession not involuntary even though defendant had recently used methamphetamine and had not slept for five days); <u>United States v. James</u>, 415 F. Supp. 2d 132, 152 (E.D.N.Y. 2005) ("Courts have rejected claims that a statement was not voluntarily made even when the defendant claims that he is physically ill or intoxicated") (citations omitted); <u>Avincola v. Stinson</u>, 60 F. Supp. 2d 133, 160 (S.D.N.Y. 1999) (valid waiver despite physical manifestations of drug use by defendant at time <u>Miranda</u> warnings were given); <u>Graves v. United States</u>, 878 F. Supp. 409, 414 (N.D.N.Y. 1995) (finding that even if the defendant was functioning with a limited capacity due to his consumption of alcohol, "there must still be some showing of official coercion" before the confession is deemed to be involuntary), <u>aff'd</u> 89 F.3d 826, 1995 WL 767118 (2d Cir. 1995); <u>United States v. DiLorenzo</u>, No. 94-CR-303 (AGS), 1995 WL 366377, at *4-9 (S.D.N.Y. June 19, 1995) (finding waiver voluntary despite defendant's testimony

that he was exhausted and under the influence of alcohol in light of credible testimony of law enforcement officer that he did not smell alcohol on defendant's breath and defendant was "clear and coherent").

Although the defendant had no prior arrests and was not familiar with the criminal justice system, I also find, based on the testimony of the officers, that the defendant was able to understand the <u>Miranda</u> warnings administered and that he voluntarily chose to waive those rights and speak with the officers. As the testimony of the officers credibly establishes, the defendant comprehended their questions and understood the <u>Miranda</u> warnings administered by Special Agent Jerla. His lack of familiarity with the criminal justice system, does not "by itself, establish that the suspect is incapable of making a voluntary and intelligent decision." <u>United States v. Gaines</u>, 295 F.3d 293, 299 (2d Cir. 2002) (inability to read or write not preclude finding of voluntariness of waiver); <u>see</u> <u>Male Juvenile</u>, 121 F.3d at 40 (holding that juvenile with documented cognitive disabilities knowingly waived his rights); <u>Burrous</u>, 147 F.3d at 116-17 (16 year-old who was not well educated made knowing and voluntary waiver).

Thus, after examining the totality of the circumstances I find that the government has demonstrated by a preponderance of the evidence that the defendant voluntarily, knowingly, and

intelligently waived his <u>Miranda</u> rights before speaking with the officers.

<u>Spoilation</u>

At the suppression hearing, defense counsel argued that sanctions should be imposed for the destruction of the photograph of the defendant taken by Officer Saleh and, specifically, that the statements made by the defendant should be suppressed. (Tr. 85:21-86:16).

"Spoilation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." <u>West v. Goodyear Tire & Rubber Co.</u>, 167 F.3d 776, 779 (2d Cir. 1999). A federal district court may impose sanctions for spoilation including dismissal and suppression of evidence. <u>Id.</u> However, such sanctions are only appropriate where the defendant shows that the government acted in bad faith in destroying the relevant evidence. <u>See</u> <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988); <u>United States v. Ossai</u>, 485 F.3d 25, 28 (1st Cir. 2007).

Defense counsel did not suggest nor does the evidence suggest that the photograph was destroyed in bad faith. Because there is no evidence that the photograph was destroyed in bad faith, I find that suppression of the statements is an inappropriate sanction for the destruction of the photograph.

<u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that the defendant's motion to suppress be denied.

A copy of this report and recommendation will be sent by overnight mail or electronically to the parties on this date. Objections to the Report and Recommendation must be filed with the Clerk of Court, with a copy to the Honorable Sterling Johnson and the undersigned, by February 20, 2009. Failure to file objections within the time specified waives the right to appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:  Brooklyn, New York
        February 5, 2009

                            _____/s/_____
                            MARILYN D. GO
                            UNITED STATES MAGISTRATE JUDGE